[No. B213097. Second Dist., Div. Five. May 25, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MARIO RAMIREZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III.A.–B.

**COUNSEL**

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Richard Mario Ramirez, appeals after a jury convicted him of shooting at an occupied automobile (Pen. Code,[1] § 246) and found he personally discharged a firearm from an automobile, thereby killing the victim (§§ 12022.53, subds. (b), (c), 12022.55). The jury found as follows: defendant was guilty of discharging a firearm in violation of section 246; defendant discharged a firearm in violation of section 12022.53, subdivisions (b) and (c); and defendant discharged a firearm from an automobile, which caused the death of Mr. Rubinos within the meaning of section 12022.55. After a record correction motion was granted, defendant was sentenced to the following sentence: five years for discharging the firearm into the car; 25 years to life pursuant to section 12022.53, subdivision (d); plus six years pursuant to section 12022.55. The section 12022.53, subdivisions (b) and (c)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

enhancements were stricken but not the jury findings in that regard. Defendant argues the evidence was insufficient to support the section 246 conviction and the trial court could not impose the indeterminate section 12022.53, subdivision (d) term.

In the published portion of the opinion, we address defendant's contention the section 12022.55 enhancement must be reversed. Defendant argues that since the uncontradicted evidence demonstrates the victim was inside a car at the time of the shooting, the section 12022.55 enhancement must be reversed. Given the statutory language, we agree with defendant. Thus, the section 12022.55 enhancement must be reversed.

## II. FACTUAL BACKGROUND

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Elliot* (2005) 37 Cal.4th 453, 466 [35 Cal.Rptr.3d 759, 122 P.3d 968]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908–909.) At approximately 1:30 p.m. on February 23, 2005, Hans Anderson Revolledo and Miguel Rubinos were in Carla Rivera's car. Mr. Revolledo and Ms. Rivera were being driven by Mr. Rubinos to a 7-Eleven store near 135th Street and Lemoli Avenue to purchase marijuana. Mr. Rubinos parked the car on the street near the 7-Eleven store and got out to buy the marijuana. Mr. Revolledo and Mr. Rubinos had purchased marijuana at the same place the previous day.

Mr. Revolledo remained in the car for a while speaking on a cellular phone. Mr. Revolledo saw Mr. Rubinos meet a thin man with shoulder-length curly hair who was about five feet six inches tall. The man wore white pants and a hooded sweatshirt. The man had large teeth when he smiled. At trial, Mr. Revolledo identified the codefendant, Sean Johnson, who is not a party to this appeal, as looking like that individual. Mr. Rubinos and Mr. Johnson walked away from the 7-Eleven store. Mr. Revolledo followed them. Ms. Rivera started her car, drove in their direction, and parked on Lemoli Avenue. Mr. Rubinos and Mr. Johnson crossed the street and entered a laundry room. Mr. Revolledo followed them inside. Ms. Rivera also walked into the laundry room. Defendant, who was waiting inside, pulled out a chrome revolver, as did Mr. Johnson. The men told Mr. Rubinos, Ms. Rivera and Mr. Revolledo, "Get on the floor and take out everything that you have." Mr. Rubinos and Mr. Revolledo complied. Mr. Revolledo removed his lighter, gum, cellular phone, and money from his pocket but not his wallet.

Thereafter, Mr. Johnson tapped Mr. Revolledo and said, "You're the first one to leave." Mr. Revolledo ran outside without his belongings. Mr. Rubinos and Ms. Rivera came out shortly thereafter. Mr. Rubinos began yelling

toward the laundry room, "I'm going to call the police." Defendant pointed his gun at them and said: "Get out. Leave." Thereafter, Mr. Revolledo saw defendant get into the right front passenger seat of a car and Mr. Johnson get into the rear seat. The car then drove away. Mr. Rubinos got into the driver's seat of Ms. Rivera's car. Ms. Rivera sat in the front passenger seat. Mr. Revolledo got into the rear seat.

Nacole Winbush had also gone to the area of the 7-Eleven store at 135th Street and Lemoli Avenue on February 23, 2005 to purchase marijuana. Ms. Winbush had previously bought marijuana there by driving up and purchasing it on approximately 15 occasions from defendant. Ms. Winbush had seen Mr. Johnson on at least five prior occasions at that location. On February 23, 2005, Ms. Winbush asked defendant if he had some pot. Mr. Johnson was standing nearby. Defendant responded in the affirmative, but on the condition that she give them a ride. Ms. Winbush agreed. Mr. Johnson got into the backseat. Defendant got into the front passenger seat. Mr. Rubinos, who was upset and cursing, followed Ms. Winbush's car. While the chase ensued, Mr. Revolledo wrote down the license plate number of the car they followed, 4JJE691. Ms. Winbush later acknowledged that that was her license plate number.

Ms. Winbush drove down 135th Street. Mr. Johnson, said: "Oh, shit, they're following. They're behind us." Ms. Winbush saw a car in her rearview mirror. The car was following close to Ms. Winbush's rear bumper. Defendant directed Ms. Winbush to drive and turn on Crenshaw Boulevard. Ms. Winbush drove fast, turning right on Crenshaw Boulevard. The other car continued to follow Ms. Winbush. Defendant directed Ms. Winbush to turn right on 147th Street. As she did so, Mr. Rubinos followed. Thereafter, Mr. Rubinos drove alongside the left side of Ms. Winbush's car and rammed her automobile. Both cars stopped. Defendant told Ms. Winbush, "Get down." Ms. Winbush heard "pop, pop" shots from inside her car, very close to her. Mr. Revolledo saw defendant move Ms. Winbush. Mr. Revolledo saw defendant fire the handgun. Mr. Revolledo saw defendant take the driver's seat of Ms. Winbush's car, which had jumped the curb. Thereafter, Ms. Winbush's car made a U-turn and drove away. Mr. Revolledo saw that Mr. Rubinos was bleeding from his head and Ms. Ramirez had injuries to the side of her face. Mr. Revolledo summoned help from a woman nearby, who called the police. Mr. Rubinos was taken to a hospital by the paramedics where he died as a result of a gunshot wound to his head.

Defendant told Ms. Winbush to put the car in reverse and get out of there. As they drove away, Ms. Winbush asked defendant if he had done anything. Defendant said the window was shot out. Defendant said, "I had to try to get them before they tried to get me." Ms. Winbush was frightened. Ms. Winbush

asked defendant and Mr. Johnson to get out of her car. Ms. Winbush was stopped by police three days later while driving her car. Thereafter, Ms. Winbush gave police permission to search her home. The search uncovered marijuana. Ms. Winbush was granted immunity from prosecution in exchange for her testimony in this case. Ms. Winbush's car was impounded by the police. Fingerprints found both inside and outside of Ms. Winbush's car were later matched to defendant.

## III. DISCUSSION

### A.–B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. The Section 12022.55 Enhancement Must Be Reversed

Defendant argues the section 12022.55 enhancement must be reversed because Mr. Rubinos was an occupant of an automobile when he was shot to death. Section 12022.55 states in part, "Notwithstanding Section 12022.5, any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury . . . or causes the death of a person, *other than an occupant of a motor vehicle*, as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony, shall be punished by an additional and consecutive term of imprisonment in the state prison for 5, 6, or 10 years." (Italics added.) Citing the italicized language in the statute, defendant argues the section 12022.55 five-year enhancement cannot apply when the victim is an occupant of a motor vehicle. We agree.

 This is an issue of statutory interpretation. We apply the following standards of statutory review described by our Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; see *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) However, the literal meaning of a statute must be in accord with its purpose as our Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993)

---

*See footnote, *ante*, page 1233.

6 Cal.4th 644, 658–659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . .' " In *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ." ■ Finally, when a penal statute is susceptible to two different interpretations, that favorable to the accused must be adopted. (*People v. Avery* (2002) 27 Cal.4th 49, 57 [115 Cal.Rptr.2d 403, 38 P.3d 1] ["[W]e have repeatedly stated that when a statute defining a crime or punishment is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt that interpretation more favorable" to the accused]; *In re Tartar* (1959) 52 Cal.2d 250, 257 [339 P.2d 553] ["The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute."].)

■ Under section 12022.55, defendant cannot be subjected to the additional three possible terms as the victim, Mr. Rubinos, was an occupant of a motor vehicle. Section 12022.55 precludes application of the statute to the fact pattern before us, as the enhancement applies where a defendant, with one of the statutorily enumerated mental states, inflicts great bodily injury or causes death *"other than an occupant of a motor vehicle"* as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony. The Legislature has unambiguously stated that section 12022.55 does not apply in situations where the victim is an occupant of a motor vehicle. Because section 12022.55 is not subject to more than one reasonable interpretation, there is no reason to refer to legislative history to explain the meaning of the enhancement. It is the Legislature's prerogative to address one aspect of a problem in a way that applies a remedy to some but not to others. (*People v. Falsetta* (1999) 21 Cal.4th 903, 918 [89 Cal.Rptr.2d 847, 986 P.2d 182]; *People v. Fitch* (1997) 55 Cal.App.4th 172, 184 [63 Cal.Rptr.2d 753].)

■ There has been a proliferation of firearm enhancement statutes and section 12022.55 must be viewed as part of that overall scheme of punishing gun use. (See § 12022.5, subd. (a) [personal use of a firearm in a felony requires consecutive term of three, four or 10 years]; § 12022.5, subd. (b)

[personal use of an assault weapon or machinegun in the commission of a felony requires consecutive term of five, six, or 10 years]; § 12022.5, subd. (d) [the enhancement provided in § 12022.5 expressly applies to personal use of a firearm during a violation of § 245 or murder "if the killing is perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury or death"]; § 12022.53, subd. (b) [as to specified felonies, personal use of a firearm requires consecutive term of 10 years]; § 12022.53, subd. (c) [as to specified felonies, personal and intentional discharge of a firearm requires consecutive term of 20 years]; § 12022.53, subd. (d) [as to specified felonies, personal and intentional discharge of a firearm causing great bodily injury or death to a person other than an accomplice requires a consecutive term of 25 years to life]; § 12022.53, subd. (e) [the enhancements in § 12022.53 apply also to a principal in the commission of an offense if it is pled and proved the person violated the criminal street gang statute, § 186.22, subd. (b), and any principal in the offense committed an act specified in § 12022.53, subds. (b)–(d)].) Further, the section 190.2, subdivision (a)(21) special circumstance applies where the "murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle" with the intent to kill. There are a plethora of enhancements and a special circumstance that apply to firearm use and the Legislature is free to rely on studies or anecdotal evidence in concluding the risk of driveby shootings of persons on the street is far more prevalent than vehicle-to-vehicle shootings, and accordingly limit the reach of section 12022.55.

The Attorney General argues section 12022.55 should be interpreted to be inapplicable *only where the victim is an occupant of the accused's vehicle.* The Attorney General argues this construction must be applied in order to avoid absurd results. There are two problems with this analysis. First, that is not what section 12022.55 plainly says. Section 12022.55 makes no reference to the accused's vehicle. Second, for the reasons stated above, the result is not absurd, given the Legislature's other proscriptions against firearm use which more than cover the field of firing a gun and causing no physical injury; great bodily injury; or death. Thus, the section 12022.5 enhancement is reversed. We obviously do not address the issue of an actor's potential liability when the victim is shot at while in the car and later after leaving the automobile. Here, the evidence demonstrates Mr. Rubinos, the victim, was entirely inside an automobile when he was fatally shot in the head.

### IV. DISPOSITION

The section 12022.55 enhancement is reversed and dismissed. The judgment is affirmed in all other respects. The superior court clerk is to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

Mosk, J., and Kriegler, J., concurred.

A petition for a rehearing was denied June 17, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 15, 2010, S184142.