[No. G045192. Fourth Dist., Div. Three. Aug. 29, 2011.]

ROBERT DUSTIN STRONG et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

Counsel

Greenberg & Greenberg and Daniel L. Greenberg for Petitioner Robert Dustin Strong.

Fascenelli & Associates and Frederick Fascenelli for Petitioner David Michael Knick.

No appearance for Respondent.

Tony Rackauckas, District Attorney, Keith Bogardus and James J. Mulgrew, Deputy District Attorneys, for Real Party in Interest.

## Opinion

**ARONSON, J.**—Robert Dustin Strong and David Michael Knick seek a writ of prohibition to overturn the trial court's denial of their motion to dismiss on ex post facto grounds (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9) murder charges filed when their victim, former Orange County Sheriff's Deputy Ira Essoe, died 29 years after they assaulted and paralyzed him.

The narrow issue for our consideration in this unusual case is whether the Legislature intended to preclude with the following language murder charges when the victim of an assault dies more than three years and a day later: "To make the killing either murder or manslaughter, it is requisite that the party die within three years and a day after the stroke received or the cause of death administered." (Pen. Code, former § 194, as amended by Stats. 1969, ch. 593, § 1, 1225, eff. Nov. 1969, subsequently amended eff. Jan. 1, 1997 (hereafter section 194 or section 194 (Nov. 1969)).)

We find nothing ambiguous in this language, which plainly establishes a time-based "immunity" (*People v. Snipe* (1972) 25 Cal.App.3d 742, 747 [102 Cal.Rptr. 6] (*Snipe*)) to particular charges, and is therefore indistinguishable in operation and effect from a statute of limitations. Changing the applicable limitations period *after* it has expired, as occurred here and in contrast to doing so "*before* the immunity of the earlier statute had attached" (*ibid.*), violates ex post facto principles. (*Stogner v. California* (2003) 539 U.S. 607, 632–633 [156 L.Ed.2d 544, 123 S.Ct. 2446] (*Stogner*); see *id.* at pp. 617–618, 630 [finding historical "unanimity . . . that the kind of statute before us is *ex post facto*"]; see also, e.g., *Falter v. U.S.* (2d Cir. 1928) 23 F.2d 420, 426 (opn. of Learned Hand, J.) (*Falter*) ["For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest."].)

· Here, after separate jury trials in 1981, Strong and Knick respectively received sentences of 17 years four months, and 16 years eight months, for the attempted murder and assault offenses they committed against Essoe in 1980. After Strong and Knick gained parole in the 1990's, the Legislature in 1997 eliminated the three-year-and-a-day limitation period in section 194 (Nov. 1969).[1]

Under *Stogner*, prosecuting Strong and Knick for murder in 2010 based on the new version of section 194, *after* the applicable limitations period expired in November 1983, violates the ex post facto clause. (*Stogner, supra*, 539 U.S. 607.) The same is true under the California Constitution. (See *People v. Alford* (2007) 42 Cal.4th 749 [68 Cal.Rptr.3d 310, 171 P.3d 32] [identical state and federal ex post facto provisions interpreted similarly].) We therefore grant Strong and Knick's petition for a writ of prohibition to restrain the trial court from permitting further prosecution.

I

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are brief and tragic. Strong, Knick, and another accomplice, in the process of burglarizing a vehicle at the Orange Mall, shot Essoe on November 6, 1980, inflicting multiple gunshot wounds, including one that severed his spinal cord and immediately paralyzed him from the waist down.

Essoe died on February 4, 2010. The coroner determined Essoe's death was a homicide, caused by "delayed complications of remote gunshot wounds [to his] torso." Essoe's paralysis led to decubitus ulcers that progressed to a bone infection and then sepsis, a fatal blood condition.

The district attorney charged Strong and Knick with Essoe's murder on November 11, 2010. The police arrested Strong on December 1, 2010, and transported him to jail. The record does not disclose Knick's date of arrest or incarceration. After the trial court denied their motions to dismiss on ex post facto and other grounds, and found sufficient evidence at the preliminary hearing to bind them over for arraignment, Strong and Knick sought writ relief in this court. We issued an order to show cause why the relief should not be granted and stayed the arraignment and further trial proceedings.

---

[1] The new version of section 194, still in effect, provides in pertinent part, with changes in italics: "To make the killing either murder or manslaughter, it is *not* requisite that the party die within three years and a day after the stroke received or the cause of death administered. *If death occurs beyond the time of three years and a day, there shall be a rebuttable presumption that the killing was not criminal.*" (§ 194, as amended by Stats. 1996, ch. 580, § 1, p. 3204, eff. Jan. 1, 1997 (hereafter section 194 (1997)).)

## II

## DISCUSSION

As noted at the outset, the Legislature's intent in section 194 governs the outcome of this petition. De novo review applies (*People v. Bojorquez* (2010) 183 Cal.App.4th 407, 418 [106 Cal.Rptr.3d 915]), but our role is limited: " 'In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law . . . .' " (*People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313]; see *People v. Ramirez* (2010) 184 Cal.App.4th 1233, 1238 [109 Cal.Rptr.3d 474] [" 'the words the Legislature chose are the best indicators of its intent' "]). Accordingly, " '[w]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211 [120 Cal.Rptr.2d 783, 47 P.3d 629].)

Section 194 is clear and unambiguous. It specified at the time of Essoe's shooting that as a precondition for "either murder or manslaughter, it is requisite that the party die within three years and a day after the stroke received or the cause of death administered." (§ 194 (Nov. 1969).) The district attorney contends this language established no limitations period for a murder prosecution. The district attorney relies on the general proposition that "[t]here is no statute of limitations for murder . . . ." (*People v. Frazer* (1999) 21 Cal.4th 737, 743 [88 Cal.Rptr.2d 312, 982 P.2d 180] (*Frazer*) [holding no ex post facto obstacle to reviving time-barred prosecution for certain sex offenses], abrogated by *Stogner, supra,* 539 U.S. at pp. 617, 627 [tracing "apparent unanimity until California's decision in *Frazer*" that "laws reviving time-barred prosecutions are *ex post facto*"].)

It is true section 194 is not labeled as a statute of limitations and that offenses punishable by death or life imprisonment are excepted (Pen. Code, § 799) among offenses for which the Legislature has specified a statute of limitations (see Pen. Code, §§ 800–804). But the fact section 194 is not labeled a "statute of limitations" is not controlling. Labels are not dispositive (see, e.g., *Serna v. Superior Court* (1985) 40 Cal.3d 239, 256 [219 Cal.Rptr. 420, 707 P.2d 793]), and therefore do not determine whether a statute functions as a time bar. (*Ibid.* [" 'labels of convenience' " do not "determine the applicability of the protections of the Bill of Rights"].) Additionally, a specific statute controls over more general precepts (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 857 [39 Cal.Rptr.2d 21, 890 P.2d 43]) and, as noted, we must assess each statute by its terms. Here, the clear terms of section 194 apply more specifically to the scenario at hand than any other statute, and those terms unambiguously provided at the time of Essoe's shooting that the

prosecutor could not bring murder charges if the victim did not die within three years and a day. Specifically, the express prerequisite that "the party die within three years and a day after the stroke received or the cause of death administered" unmistakably established a time bar for homicide charges.

Having established a time bar, the Legislature was entitled to change it, with the proviso that ex post facto principles would preclude prosecutions for which the limitations period had expired. *Stogner* confirmed this constitutional rule. There, the high court addressed the 1993 enactment in Penal Code section 803, subdivision (g), of a new limitations period reviving time-barred prosecutions for sex-related child abuse. The statute authorized prosecution "where the original limitations period ha[d] expired—as long as prosecution beg[an] within a year of a victim's first complaint to the police." (*Stogner, supra,* 539 U.S. at p. 609.) Our Supreme Court had upheld the law (*Frazer, supra,* 21 Cal.4th 737), but the high court struck it down based on the ex post facto categories articulated in *Calder v. Bull* (1798) 3 U.S. 386 [1 L.Ed. 648] and "a long line of authority holding that a law of this type violates the *Ex Post Facto* Clause." (*Stogner,* at p. 621.)

 The United States Supreme Court explained that the type of change at issue in *Stogner,* in which "the government has refused 'to play by its own rules,' [citation]," transgressed ex post facto limits by "risk[ing] both 'arbitrary and potentially vindictive legislation,' " "ero[ding] . . . the separation of powers," and "depriv[ing] the defendant of the 'fair warning' [citation] that might have led him to preserve exculpatory evidence." (*Stogner, supra,* 539 U.S. at p. 611.) The court previously had recognized as authoritative Justice Chase's description in *Calder v. Bull* of four categories of ex post facto laws (see *Stogner,* at p. 611), which Justice Chase illustrated with examples of abusive acts by Parliament. Those examples included that " '[a]t . . . times they inflicted punishments, where the party was not, by law, liable to any punishment.' " (*Id.* at p. 612, original italics.) In Justice Chase's four-part classification, this form of ex post facto legislative action fit within the prohibited category of "[e]very law that aggravates a crime, or makes it greater than it was, when committed."[2] (*Calder v. Bull, supra,* 3 U.S. at pp. 390–391; see *Stogner,* at pp. 612–613.)

---

[2] Justice Chase tallied the four categories as follows: "I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. *Every law that aggravates a crime, or makes it greater than it was, when committed.* 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. *Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.* All these, and similar laws, are manifestly unjust and oppressive." (*Calder v. Bull, supra,* 3 U.S. at pp. 390–391, italics added, as altered by *Stogner, supra,* 539 U.S. at p. 612.)

The *Stogner* court explained that the revival statute at issue there ran afoul of Justice Chase's second category as follows: "After (but not before) the original statute of limitations had expired, a party such as Stogner was not 'liable to any punishment.' California's new statute therefore 'aggravated' Stogner's alleged crime, or made it 'greater than it was, when committed,' in the sense that, and to the extent that, it 'inflicted punishment' for past criminal conduct that (when the new law was enacted) did not trigger any such liability." (*Stogner, supra*, 539 U.S. at p. 613.)

■ In holding California's enactment reviving time-barred prosecutions violated ex post facto norms, the high court relied on the "apparent unanimity" of courts, apart from *Frazer*, finding such a procedure unconstitutional. (*Stogner, supra*, 539 U.S. at pp. 617, 616–619.) The court also suggested that such an enactment violates the fourth ex post facto category, but did not make a final determination in light of the clear command of Justice Chase's second category. Regarding the fourth category, the court observed that "to resurrect a prosecution after the relevant statute of limitations has expired is to eliminate a currently existing conclusive presumption forbidding prosecution, and thereby to permit conviction on a quantum of evidence where that quantum, at the time the new law is enacted, would have been legally insufficient." (*Id.* at p. 616.) In other words, where the expiration of a limitations period has rendered the prosecution's burden of proof insurmountable, voiding the time bar effectively lowers the prosecution's burden to a passable height.

■ Thus, we find unpersuasive the district attorney's suggestion that amending section 194 in 1997 could not have posed ex post facto implications because it was a "mere procedural change which only modified a rule of evidence." Changes in the rules of evidence may trigger ex post facto protection. For example, in *Carmell v. Texas* (2000) 529 U.S. 513 [146 L.Ed.2d 577, 120 S.Ct. 1620] (*Carmell*), the high court found an ex post facto violation in an enactment dispensing with a former requirement for corroboration of victim testimony in certain sex offense cases. The court found the evidentiary change violated the fourth of Justice Chase's four ex post facto categories as "unquestionably a law 'that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at

As the Supreme Court noted in *Stogner, supra*, 539 U.S. at page 612, "Chase traced these four categories back to Parliament's earlier abusive acts, as follows: [¶] Category 1: 'Sometimes they respected the crime, by declaring acts to be treason, which were not treason, when committed.' [¶] Category 2: *'[A]t other times they inflicted punishments, where the party was not, by law, liable to any punishment.'* [¶] Category 3: '[I]n other cases, they inflicted greater punishment, than the law annexed to the offence.' [¶] Category 4: *'[A]t other times, they violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit.'* "

the time of the commission of the offence, in order to convict the offender.' " (*Id.* at p. 530.) The court observed that attempting to thus "reduc[e] the quantum of evidence required to convict an offender is as grossly unfair as . . . retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof."[3] (*Carmell*, at p. 532.) In any event, following the high court's example in *Stogner*, we need not address the fourth category further because the ex post facto violation here fits squarely within the second category of " 'inflict[ing] punishments, where the party was not, by law, liable to any punishment.' " (*Stogner, supra*, 539 U.S. at p. 612, italics omitted.)

With respect to enactments purporting to revive criminal liability, *Stogner* carefully distinguished instances "where courts have upheld extensions of *unexpired* statutes of limitations," describing them as "extensions that our holding today does not affect." (*Stogner, supra*, 539 U.S. at p. 618, original italics; see, e.g., *Snipe, supra*, 25 Cal.App.3d at p. 747.) These cases do not implicate fundamental fairness or separation of powers concerns because the decision to permit or pursue prosecution in open, unexpired cases remains in the legislative and executive domains, respectively. (See *Stogner*, at pp. 617–619; see also, e.g., *Falter, supra*, 23 F.2d at p. 426 ["unfair and dishonest" to revive expired limitations period, "[b]ut, while the chase is on, it does not shock us to have it extended beyond the time first set"].) Nor does an extension, unlike a revival, implicate reliance interests, including "the potentially lengthy period of time (in this case, 22 years) during which the accused lacked notice that he might be prosecuted and during which he was unaware, for example, of any need to preserve evidence of innocence." (*Stogner*, at p. 631; see also *id.* at p. 611 [limitations period " 'is . . . an amnesty, declaring that after a certain time . . . the offender shall be at liberty to return to his country' "].)

Here, these concerns are apt, since the limitations period expired in November 1983, more than 13 years before the Legislature amended section 194 in 1997, and almost 27 years before the district attorney brought murder charges after Essoe's 2010 death. Strong and Knick declare they have relied on section 194's bar to further charges against them since 1983 and claim they have led crime-free lives after completing their prison sentences.

 The district attorney's characterization of section 194 as something other than a time bar, relying on inapt cases describing it in particular

---

[3] At oral argument, the deputy district attorney attempted to distinguish *Carmell* on grounds the enactment there purported to retrospectively change an element of the offense. The distinction fails, however, because corroborative *evidence* was never an element of the sexual *crimes* at issue, as both the majority and dissent in *Carmell* expressly recognized. (*Carmell, supra*, 529 U.S. at p. 531; *id.* at p. 559 (dis. opn. of Ginsburg, J.).)

circumstances as "merely" a rule of evidence, is unpersuasive. (*Snipe, supra,* 25 Cal.App.3d at p. 746; *People v. Clark* (1951) 106 Cal.App.2d 271, 277 [235 P.2d 56] (*Clark*); *People v. Murphy* (1870) 39 Cal. 52, 55 (*Murphy*).) In fact, these cases reveal courts have uniformly regarded section 194 as establishing an *absolute* rule of evidence in the sense that the prosecutor could not present evidence after expiration of the time bar—no different from a statute of limitations. In any event, none of these cases resemble the present scenario, where the time bar has passed before an amendment purports, according to the prosecutor, to revive expired charges.

*Snipe,* for example, arose when a child, "brutally beaten on February 26, 1969," died in November 1970, more than a year and one day after her injuries were inflicted. (*Snipe, supra,* 25 Cal.App.3d at p. 745.) The district attorney brought murder charges against the mother and her male companion, which the trial court dismissed on ex post facto grounds. The *Snipe* court, however, explained the ex post facto challenge was mistargeted. The original version of section 194, enacted in 1872 and on which the defendants relied, had adopted the common law rule precluding murder charges if the victim did not die within a year and a day of an attack. But the Legislature extended the limitations period to three years and one day in 1969, a year before the child died and several months before the former limitations period expired. The *Snipe* court explained: "The change in the time of death requirement, therefore, does not deprive respondents of a vested defense. Neither does it affect the quality or quantum of the People's evidence or the burden required to establish respondents' guilt." (*Snipe,* at p. 747.) Thus, the court found no ex post facto violation.

Relying on *Murphy, supra,* 39 Cal. 52 and *Clark, supra,* 106 Cal.App.2d 271, *Snipe* also provided historical background to section 194, from which the district attorney extracts the quote on which he relies: "When the common law rule was incorporated into the Criminal Practice Act of this state, it was not made an element of the offense itself; it was made '*a rule of evidence merely.*' [Citations.]" (*Snipe, supra,* 25 Cal.App.3d at p. 746, italics added.) This phrasing, however, does not undermine the categorical nature of section 194's time bar. As *Snipe* explained, although the time limitation in the statute is not itself an element of any offense, it remains "of course *essential* to a successful prosecution for the crime of murder or manslaughter that the victim die within the time prescribed in Penal Code section 194." (*Snipe,* at p. 746, italics added.) Indeed, *Snipe* acknowledged the absolute nature of the time bar, describing it as an "immunity," but one that did not apply there because the Legislature had amended the limitations period "several months *before* the immunity of the earlier statute had attached." (*Id.* at p. 747, original italics.) Consequently, *Snipe* does not support the district attorney's position.

Nor does *Murphy* or *Clark*. The courts in those cases used the phrasing "a rule of evidence merely" to distinguish application of the year-and-a-day rule from the particular *pleading* or *instructional* issues at hand. Far from undermining section 194 as a time bar, as the district attorney asserts, *Snipe* and its antecedents affirm the statute's categorical operation and effect. In *Murphy*, the court described "[t]he requirement that it must appear that the party died within a year and a day" as a rule of evidence in contrast to a pleading rule. The court rejected the appellant's assertion the time requirement constituted an essential pleading allegation that rendered an indictment without it defective. (*Murphy, supra,* 39 Cal. at p. 55.) Although the requirement need not be pleaded, the court nevertheless reaffirmed its absolute nature, like a statute of limitations, observing: "Unless the party dies within that time the prosecution will not be permitted to show that he died of the injury received." (*Ibid.*)

The same is true in *Clark*. There, the defendant divined in the year-and-a-day rule a corollary that no third party may contribute to the victim dying within that period. (*Clark, supra,* 106 Cal.App.2d at p. 277.) According to the defendant, if someone else's negligence "accelerated" the victim's death to within a year and a day, the defendant was relieved of liability. (*Ibid.*) The defendant claimed she was entitled to an instruction reflecting her view of section 194. But *Clark* rejected the defendant's "attempt[] to read into the statute an additional requirement" precluding liability as she claimed. (106 Cal.App.2d at p. 277.) *Clark* explained another's negligence serves as a defense only if it is a supervening cause of the victim's death, and no evidence supported such an instruction. *Clark* explained section 194 did not support the defendant's broad theory of immunity based on contributing causes, but rather operated "merely [as] a rule of evidence" governing whether evidence could be presented at all. (106 Cal.App.2d at p. 277.) The court reaffirmed the categorical nature of the limitations date, with an absolute bar against evidence of murder or manslaughter "unless the party dies within that time." (*Ibid.*)

These cases reflect that the year-and-a-day or three-years-and-a-day time bar functions in a manner similar to a conclusive evidentiary presumption. Indeed, in *Stogner*, the high court described an expired statute of limitations as a "conclusive presumption forbidding prosecution." (*Stogner, supra,* 539 U.S. at p. 616.) The district attorney views the presumption differently, reasoning that as a *mere* rule of evidence, presumptions may be changed. There are two problems with this approach in the circumstances here.

██ First, a conclusive presumption "is more accurately described as a rule of substantive law rather than of evidence. [Citations.]" (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, § 160, p. 301;

see generally *People v. McCall* (2004) 32 Cal.4th 175, 185–186 [8 Cal.Rptr.3d 337, 82 P.3d 351] [" ' "Conclusive presumptions are not evidentiary rules so much as they are rules of substantive law." ' "].) As a rule of substantive law, the time bar established in former section 194 represents a policy choice that courts may not second-guess on nonconstitutional grounds. "The Legislature declares state public policy, not the courts." (*In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 628 [60 Cal.Rptr.3d 39]; see, e.g., *Larry Menke, Inc. v. DaimlerChrysler Motors Co., LLC* (2009) 171 Cal.App.4th 1088, 1093 [90 Cal.Rptr.3d 389] [courts must " 'follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, " ' "whatever may be thought of the wisdom, expediency, or policy of the act" ' " ' "].) Thus, the sentiment on which the district attorney relies in which courts have commented on the year-and-a-day rule or similar strictures as "archaic" (*Snipe, supra,* 25 Cal.App.3d at p. 747) or "an outdated relic of the common law" (*Rogers v. Tennessee* (2001) 532 U.S. 451, 462 [149 L.Ed.2d 697, 121 S.Ct. 1693]) is simply irrelevant. ▮ We may not rewrite the law, nor pretend to write on a blank slate and reach different policy conclusions than the Legislature, nor decline to give effect to the Legislature's policy choices. Accordingly, the district attorney's characterization of former section 194 as a rule of evidence that *could be* or *should be* changed has no bearing on our interpretation of the statute, in which the Legislature clearly and unambiguously established a time bar.

▮ Second, and more to the point, while the Legislature *has* changed the conclusive presumption in section 194 to a rebuttable one (§ 194 (1997)), legislative changes must adhere to constitutional limits. As discussed, a statutory amendment enacted *after* a time bar has expired, as here, cannot authorize a prosecution that violates the ex post facto restraint. (*Stogner, supra,* 539 U.S. at pp. 632–633.) The district attorney suggests the time bar was never triggered because a murder is not "complete" until the victim dies (*People v. Celis* (2006) 141 Cal.App.4th 466, 471 [46 Cal.Rptr.3d 139]) and therefore, even conceding the statute imposes a time limitation, it did not begin to run until Essoe died. We are not persuaded. The district attorney's construction turns section 194 on its head, requiring the victim to die as a prerequisite that is not specified in the statute. To the contrary, its plain terms preclude murder charges if the victim did *not* die within three years and a day of an attack.

▮ The district attorney also suggests that application of the current version of section 194 does not offend ex post facto constraints because it is not retroactive. The district attorney appears to argue that a present enactment does not operate retrospectively precisely because it is applied currently, rather than retroactively. This, however, is merely a variation of the district attorney's argument that a homicide is not complete until the victim dies. The district attorney overlooks that the retroactive application at issue concerns

section 194, not whether the statutory elements of murder are complete. In essence, the district attorney's argument reduces to the claim that a new law is not retroactive because it is current. But this circular, conclusory rationale simply ignores the meaning of the term "ex post facto" and would eliminate ex post facto protection from the Constitution. This is not the law. The present version of section 194, as applied here, has a retroactive effect because it voids the prior immunity afforded by the expiration of a time bar. Prosecution under the new statute therefore violates the ex post facto clause (*Stogner, supra*, 539 U.S. at pp. 632–633) of the federal and state Constitutions.

## III

## DISPOSITION

The petition is granted and our stay dissolved. Let a writ of prohibition issue restraining the trial court from permitting further prosecution of Strong and Knick in this matter.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied November 22, 2011, S197055.