[No. E052612. Fourth Dist., Div. Two. Oct. 16, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ROGELIO MONCADA, Defendant and Appellant.

COUNSEL

Stephen D. Klarich for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Bradley A. Weinreb, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, J.—**

## I.  INTRODUCTION

Defendant Jose Rogelio Moncada appeals from his conviction of involuntary manslaughter (Pen. Code,[1] § 194) and child abuse homicide, i.e., inflicting injury on a child under eight years old, which is reasonably likely to cause great bodily injury, causing death (§ 273ab). Defendant contends his involuntary manslaughter conviction should be reversed because a heightened showing of proximate cause is required to trigger criminal liability for a death

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

that occurs more than three years after an unlawful act. He next contends the trial court erred in denying his motion to acquit because the trial court failed to consider the rebuttable presumption that a death is not criminal when it occurs more than three years after the defendant's act; the death was not a direct, natural, and probable consequence of his actions; and the stomach rupture that was the immediate cause of death was an intervening independent cause. Finally, he contends that because the child was more than eight years old when he died, defendant did not violate section 273ab as a matter of law. We find no error, and we affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

In November 2000, defendant was caring for his then three-month-old son, Joseph. When Joseph would not stop crying, defendant shook him and then put his hand on the child's face and pushed it into the arm of a couch. Joseph stopped breathing, and defendant called 911. Defendant admitted the incident and entered a plea of guilty to a violation of section 273a, subdivision (a) and admitted a great bodily injury allegation under section 12022.7, subdivision (b). He was sentenced to 10 years four months in prison.

Meanwhile, Joseph was discharged from the hospital after three and a half to four months of treatment. As a result of the abuse, Joseph suffered fractures to the base of the skull and bleeding on the brain, resulting in brain damage, poor vision, spastic quadriplegia, seizures, and other complications. He could not walk, speak, use sign language, or otherwise communicate except through vocalizing and crying. He expressed pain by becoming fussy and irritable and by becoming "stiff and grimacing." In 2002, he was admitted to a group home for developmentally disabled children.

As is typical for children with similar brain injuries, Joseph had difficulty swallowing, leading to pneumonia from aspirating food. In January 2002, a Nissen fundoplication and gastrostomy were performed on him. The purpose of the fundoplication procedure was to correct reflux of stomach fluid into the esophagus. Dr. Gerald Gollin, who performed the surgery, testified that about 95 percent of fundoplication procedures are performed because of neurological impairment due to birth defects, or in Joseph's case, traumatic brain injury. In the gastrostomy, a feeding tube was inserted into the stomach because he was unable to swallow properly, and his stomach did not empty appropriately because of the brain trauma. Later, he had a gastrojejunostomy tube inserted to deliver food directly to the jejunum. In 2003, a revision of the fundoplication was performed after the sutures tore and it slipped out of place.

In 2008, a nurse at Joseph's group home noticed mucous membrane from the inside of the stomach protruding from the site of Joseph's feeding tube

and some bleeding at the site. In May 2008, Joseph was hospitalized due to a distended abdomen. Dr. Gollin performed a colonoscopy and confirmed that the child's intestine had enlarged. Dr. Gollin testified that scar tissue or formation of adhesion bands is a common result of any surgery, although it is rare for adhesion bands to cause life-threatening injury. In July 2008, the child's pediatrician noted that his feeding tube site was "okay."

On September 23, 2008, an instructional assistant who accompanied Joseph on his bus ride to school noticed he was unusually quiet and appeared to be in pain; his stomach was hard and his lips and fingernails were blue. She administered oxygen and called ahead to the school to warn the nurse. When the bus arrived at the school, 911 was called, and the child was taken to the emergency room.

Joseph died that same day. Dr. Mark Fajardo, the pathologist who performed the autopsy, stated his opinion that Joseph had died of "[c]omplication of remote multiple blunt force trauma." The child's stomach had ruptured, allowing bacteria to enter his system, leading to sepsis and death. There was an adhesion band of scar tissue near the area of rupture, and the scar tissue had been caused by the 2002 and 2003 surgeries, which the child required because of his diminished brain functions from the November 2000 abuse. Dr. Fajardo testified causation was "a matter of connecting the dots."

Dr. Chalmer Dean McClure, a neurologist who treated Joseph in 2001, testified that it was a "possibility" that a child with similar brain deficits would require gastrostomy and that "shaken baby syndrome" can lead to a gastrostomy "[i]n various scenarios." Dr. McClure had previously seen adhesion bands in children with traumatic brain injury, although that was an area outside his expertise.

Dr. Rebeca Piantini, a pediatrician, testified that "[m]ost kids who are victims of abusive head trauma pass away," even with treatment, either immediately from the injury or "from secondary complications, complications of infection, complications of malfunction of shunts, complications of abdominal, complications of severe malnutrition; there's all sorts of stuff." She testified that a brain injury could "indirectly" cause a stomach to explode.

The jury found defendant guilty of involuntary manslaughter as a lesser included offense to the crime of second degree murder charged in count 1, and also found him guilty of child abuse homicide in count 2. The trial court sentenced defendant to 25 years to life on count 2 and imposed and stayed a four-year term for count 1 under section 654. Defendant was given credit for the time served on his prior child abuse conviction.

## III.  DISCUSSION

A.  *Required Showing of Proximate Cause to Trigger Criminal Liability for Death That Occurs More Than Three Years After Unlawful Act*

Defendant contends his involuntary manslaughter conviction should be reversed because a heightened showing of proximate cause is required to trigger criminal liability for a death that occurs more than three years after an unlawful act.

### 1.  *Standard of Review*

The interpretation of a statute presents a question of law which we review de novo on appeal. (*People v. Wills* (2008) 160 Cal.App.4th 728, 736 [73 Cal.Rptr.3d 104].)

### 2.  *Analysis*

Section 194 provides: "To make the killing either murder or manslaughter, it is not requisite that the party die within three years and a day after the stroke received or the cause of death administered. If death occurs beyond the time of three years and a day, *there shall be a rebuttable presumption that the killing was not criminal.* The prosecution shall bear the burden of overcoming this presumption. . . ." (Italics added.)

Under common law, if a person who was injured by the act of another did not die immediately, it was presumed that death beyond an established period was due to some other cause, and the prosecutor was precluded from showing that the victim died of the injury received. (See *People v. Murphy* (1870) 39 Cal. 52, 55.) When common law principles were codified in this state, the common law rule was made a conclusive presumption. (Former § 194 [stating, "In order to make the killing either murder or manslaughter, it is requisite that the party die within a year and a day after the stroke received, or the cause of death administered." (Stats. 1850, ch. 99, § 27, p. 232.)].) Under that rule, the People were required to establish that the victim died within the specified period. (See, e.g., *Strong v. Superior Court* (2011) 198 Cal.App.4th 1076, 1079 [132 Cal.Rptr.3d 18] [stating that former § 194 "plainly establishe[d] a time-based 'immunity' [citation] to particular charges, and [wa]s therefore indistinguishable in operation and effect from a statute of limitations"].) In 1996 the Legislature amended section 194 to its present form, adding the rebuttable presumption language.

Defendant argues that unless section 194 is construed as establishing a heightened standard of proximate cause, the statute is meaningless. We

presume, however, that the Legislature, in using the term "rebuttable presumption" when it amended section 194, was aware of the meaning of that term as used in other statutes and case law and therefore did not intend for the term to have any special meaning in section 194. (E.g., *People v. Low* (2010) 49 Cal.4th 372, 386, fn. 8 [110 Cal.Rptr.3d 640, 232 P.3d 635].) Evidence Code section 601 provides that a rebuttable presumption "is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." If the former standard applies to section 194, the presumption merely required the prosecution to produce evidence that Joseph's death was caused by defendant's actions. We will presume the latter standard applies, and that the rebuttable presumption in section 194 affected the burden of proof.

"The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.) "When a presumption affecting the burden of proof operates in a criminal action to establish presumptively any fact that is essential to the defendant's guilt, the presumption operates only if the facts that give rise to the presumption have been found or otherwise established beyond a reasonable doubt, and, in such case, the defendant need only raise a reasonable doubt as to the existence of the presumed fact." (Evid. Code, § 607.)

Our Supreme Court has described the requirement of proof beyond a reasonable doubt as "the highest standard of factual certainty." (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1022 [95 Cal.Rptr.3d 615, 209 P.3d 946].) The jury was repeatedly instructed to apply that standard to all the elements of the crimes, including causation. Specifically, the jury was instructed, "The law presumes that a killing is not criminal if the person killed dies more than three years and one day from the day of the incident that caused the death. [¶] The People must overcome this presumption by proving that the killing was criminal. If you have a reasonable doubt whether the killing was criminal, you must find the defendant not guilty." In the instructions on murder and involuntary manslaughter, the trial court instructed the jury on causation as follows: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. [¶] There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death." The trial court gave a substantially similar instruction as to child abuse homicide. In addition, the trial court gave a special instruction on causation: "There may be more than

one cause of death. An act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death. [¶] The failure of the [*sic*] Joseph or another person to use reasonable care may have contributed to the death. But if the defendant's act was a substantial factor causing the death, then the defendant is legally responsible for the death even though Joseph or another person may have failed to use reasonable care. [¶] The failure of the doctors or medical staff to use reasonable care in treating Joseph may have contributed to the death. But if the injury inflicted by the defendant was a substantial factor causing the death, then the defendant is legally responsible for the death even though the doctors or medical staff may have failed to use reasonable care. On the other hand, if the injury inflicted by the defendant was not a substantial factor causing the death, but the death was caused by grossly improper treatment by the doctors or medical staff, then the defendant is not legally responsible for the death. [¶] If you have a reasonable doubt whether the defendant's act caused the death, you must find him not guilty."

In short, the jury was instructed generally and specifically that it had to find every element of the crimes, including proximate cause, true beyond a reasonable doubt. Given that the reasonable doubt standard is "the highest standard of factual certainty" (*People v. Nguyen, supra,* 46 Cal.4th at p. 1022), we reject defendant's argument that section 194 should be construed to require an even higher standard.

### B. *Denial of Motion to Acquit*

Defendant contends the trial court erred in denying his motion to acquit because the trial court failed to consider the rebuttable presumption that a death occurring more than three years after the defendant's act was not criminal; the death was not a direct, natural, and probable consequence of his actions; and the stomach rupture was an independent intervening cause of death.

### 1. *Additional Background*

After the People presented their case-in-chief, defense counsel moved for acquittal under section 1118.1 for insufficiency of the evidence on the ground the child's death was not a direct, natural, and probable consequence of defendant's acts. After hearing arguments, the trial court denied the motion. The trial court found that the evidence was sufficient to establish that Joseph's "death was a direct, natural, and probable consequence of [defendant's] act, and a reasonable person would know that it was likely. And that the defendant, in fact, knew it was likely, if nothing unusual interceded. And

nothing unusual interceded in this case." The trial court held that the prosecution had successfully rebutted the presumption that the death was lawful.

## 2. Standard of Review

When we review a claim of error in the trial court's denial of a motion for acquittal under section 1118.1, "we apply the same standard as when evaluating the sufficiency of evidence to support a conviction, except that we consider only the evidence in the record at the time the motion was made. [Citations.] We review that evidence in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable jury could find guilt beyond a reasonable doubt. [Citation.]" (*People v. Roldan* (2011) 197 Cal.App.4th 920, 924 [129 Cal.Rptr.3d 45].)

## 3. Analysis

### (a) Effect of rebuttable presumption

Defendant contends the trial court erred in denying his motion to acquit, because the trial court failed to consider the rebuttable presumption that a death occurring more than three years after the defendant's act was not criminal.

In denying defendant's motion under section 1118.1, the trial court explicitly stated that the prosecution had successfully rebutted the presumption under section 194 that the death was lawful. We therefore reject defendant's argument that the trial court failed to consider the presumption.

### (b) Direct, natural, and probable consequence of defendant's actions

Defendant next contends the child's death was not a direct, natural, and probable consequence of his actions.

Tort principles of proximate or legal causation apply to crimes; thus, the defendant's acts must be the legally responsible cause of the injury, death, or other harm constituting the crime. (*People v. Schmies* (1996) 44 Cal.App.4th 38, 46–47 [51 Cal.Rptr.2d 185].) "To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical. [Citations.]" (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 583–584 [112 Cal.Rptr.2d 401], fn. omitted.) "[A]s long as the jury finds that without the criminal act the death would not have occurred when it did, it

need not determine which of the concurrent causes was the principal or primary cause of death." (*People v. Catlin* (2001) 26 Cal.4th 81, 155 [109 Cal.Rptr.2d 31, 26 P.3d 357].)

██ The pathologist who performed the autopsy on Joseph's body stated his opinion that the cause of death was complications from the multiple blunt force trauma defendant had inflicted. Other medical expert testimony established that the initial assault set in motion the life-altering complications and secondary medical problems that required surgical intervention, and that such complications and secondary problems were a reasonably foreseeable result of the initial assault. In denying defendant's motion under section 1118.1, the trial court could reasonably conclude the adhesion bands that ultimately led to the rupture of Joseph's stomach were a natural consequence of the initial assault.

### (c) Independent intervening cause

Finally, defendant contends the stomach rupture was an independent intervening cause of death.

██ Even if a victim's death occurs in an unanticipated manner, the defendant is liable for homicide unless a superseding intervening act has broken the chain of causation. The intervening cause must be unforeseeable and extraordinary, and a defendant remains criminally liable if he might reasonably have contemplated the possible consequence or should have foreseen the possibility of harm of the kind that could result from his act. (*People v. Fiu* (2008) 165 Cal.App.4th 360, 371 [81 Cal.Rptr.3d 32].) In *People v. Funes* (1994) 23 Cal.App.4th 1506 [28 Cal.Rptr.2d 758], for example, the court held that the trial court had properly rejected an instruction on intervening causes in a prosecution for murder when the victim died 46 days after his beating, following a medical decision to withhold antibiotics. The court held that the decision to withhold antibiotics, as a matter of law, was not an independent intervening cause and was a reasonably foreseeable result of the defendant's act of hitting the victim on the head with a baseball bat. (*Id.* at pp. 1522–1523.)

Whether an independent act is a superseding cause of injury or death is generally a question of fact for the trier of fact beyond a reasonable doubt (*People v. Morse* (1992) 2 Cal.App.4th 620, 670 [3 Cal.Rptr.2d 343]), unless undisputed evidence reveals " 'a cause so remote that a court may properly decide that no rational trier of fact could find the needed nexus. [Citations.]' [Citation.]" (*People v. Cervantes* (2001) 26 Cal.4th 860, 871–872 [111 Cal.Rptr.2d 148, 29 P.3d 225].) In this case, the abundant medical testimony as recounted above created a question of fact for the trier of fact as to

whether the rupture of Joseph's stomach was a superseding cause of his death. Substantial evidence supported the trial court's ruling on that issue in denying defendant's motion under section 1118.1.

### C. *Section 273ab*

Defendant contends that because Joseph was more than eight years old when he died, defendant did not violate section 273ab as a matter of law.

#### 1. *Standard of Review*

"The interpretation of a statute presents a question of law subject to de novo appellate review." (*People v. Wills, supra*, 160 Cal.App.4th at p. 736.)

#### 2. *Analysis*

Section 273ab, subdivision (a) states, "Any person, having the care or custody of a child who is under eight years of age, who assaults the child by means of force . . . resulting in the child's death, shall be punished by imprisonment . . . ." Defendant argues that the statute should be interpreted to mean that the phrase "who is under eight years of age" applies to the child's age *both* at the time of assault and the time of death. Defendant has cited no authority directly addressing the issue, and our own research has revealed none.

■ The "last antecedent" rule of statutory construction directs that " ' "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' [Citations.]" (*People v. Lewis* (2008) 43 Cal.4th 415, 492 [75 Cal.Rptr.3d 588, 181 P.3d 947].) ■ Under that rule, the phrase, "who is under eight years of age" logically applies only to "[a]ny person, having the care or custody of a child who is under eight years of age, who assaults the child by means of force . . ." not to the more remote phrase, "resulting in the child's death." (§ 273ab, subd. (a).)

Courts addressing section 273ab in other contexts appear to have adopted that interpretation of the statute. For example, one court has declared that the purpose of the statute is " 'to protect children at a young age who are particularly vulnerable.' " (*People v. Wyatt* (2010) 48 Cal.4th 776, 780 [108 Cal.Rptr.3d 259, 229 P.3d 156].) The court defined the elements of the offense as follows: " '(1) A person, having the care or custody of a child under the age of eight; (2) assaults this child; (3) by means of force that to a reasonable person would be likely to produce great bodily injury; (4) resulting in the child's death.' [Citations.]" (*Ibid.*) In *People v. Albritton* (1998)

67 Cal.App.4th 647 [79 Cal.Rptr.2d 169], the court considered a challenge to the statute on the ground it was unconstitutionally vague and overbroad. In rejecting that challenge, the court explained, "On its face, the statute gives explicit notice to individuals 'having the care or custody of a child who is under eight years of age' (§ 273ab) that they fall within the purview of the statute. . . . [¶] The statute also gives plain notice that the proscribed act is an assault on a child under eight years of age with force that objectively is likely to produce great bodily injury." (*Id.* at pp. 657–658.) The court further stated the mens rea required for the offense: "The mens rea for the crime is willfully assaulting a child under eight years of age with force that objectively is likely to result in great bodily injury—that is, the assault must be intentional." (*Id.* at p. 658.) Thus, those courts recognized implicitly that the phrase "who is under eight years of age" applies to the child's age at the time of the *assault*. We likewise adopt that construction of the statute.

## IV.  DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and King, J., concurred.

On November 20, 2012, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 13, 2013, S206723.