[No. D050280. Fourth Dist., Div. One. Feb. 29, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
KAEOKULANI WILLS, Defendant and Appellant.

[No. D051292. Fourth Dist., Div. One. Feb. 29, 2008.]

In re KAEOKULANI WILLS on Habeas Corpus.

## Counsel

Patrick Morgan Ford for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Melissa Mandel, Scott Taylor and James D. Dutton, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**NARES, Acting P. J.**—The San Diego County District Attorney charged Kaeokulani Wills in an amended information with nine counts of committing a lewd act against a child under the age of 14 (Pen. Code,[1] § 288, subd. (a)), and four allegations he had substantial sexual conduct with the victim (§ 1203.066, subd. (a)(8)). The charges and allegations involved conduct that allegedly occurred in late 1995, when the victim, Megan, was 11 years of age. In March 2006 Wills pleaded guilty to three counts of violating section 288, subdivision (a) (counts 2, 3 & 4). He also admitted the section 1203.066, subdivision (a)(8) enhancement allegation as to one of those counts (count 3), thereby rendering him presumptively ineligible for probation under that subdivision unless he qualified for probation under "all" of the criteria specified in the exception codified in former section 1203.066, subdivision (c).[2] One of those criteria, set forth in former subdivision (c)(2) of that

---

[1] All further statutory references are to the Penal Code.

[2] Former section 1203.066, subdivision (c), which was effective to December 31, 2005, provided in part: "(c) *Paragraph[] . . . (8) . . . of subdivision (a) shall not apply when the court makes all of the following findings:* [¶] (1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in

section (hereafter former section 1203.066(c)(2)), required the court, in order to overcome Wills's presumptive ineligibility for probation, to find that "[a] grant of probation to the defendant *is* in the best interest of the *child*." (Italics added.)

At the sentencing hearing in May 2006, defense counsel argued that Wills was entitled to a grant of probation because he satisfied all of the section 1203.066, subdivision (c) probation eligibility criteria with the exception of the " 'best interest of the child' " factor set forth in former section 1203.066(c)(2), which he asserted did not apply because Megan was 22 years of age. The prosecutor argued Wills was ineligible for probation because Wills could not meet the " 'best interest of the child' " criterion as Megan was not a child and suggested that probation would not have benefited her at the time of the offenses because there was no continuing relationship between Wills and Megan's mother after Wills was charged in this matter. The court found that Wills was ineligible for probation and sentenced him to a six-year prison term, consisting of the midterm of six years as to count 2 and concurrent midterms of six years each as to counts 3 and 4.

In his appeal, Wills contends the judgment should be reversed and the case remanded for resentencing because the court erred by conducting the section 1203.066 probation analysis without considering under former section 1203.066(c)(2) whether probation would have been in Megan's best interests *at the time of the offenses in 1995*. In his habeas corpus petition, Wills repeats this same contention, but further asserts the supplemental exhibits attached to his petition show the court made its sentencing decision based upon the erroneous factual assumptions that (1) he did not financially support Megan's mother following the investigation into the molestations, and (2) he was a fugitive who fled the jurisdiction following that investigation.

the victim's household. [¶] (2) *A grant of probation to the defendant is in the best interest of the child.* [¶] (3) Rehabilitation of the defendant is feasible, the defendant is amenable to undergoing treatment, and the defendant is placed in a recognized treatment program designed to deal with child molestation immediately after the grant of probation or the suspension of execution or imposition of sentence. [¶] (4) The defendant is removed from the household of the victim until the court determines that the best interests of the victim would be served by returning the defendant to the household of the victim. While removed from the household, the court shall prohibit contact by the defendant with the victim, except the court may permit the supervised contact, upon the request of the director of the court ordered supervised treatment program, and with the agreement of the victim and the victim's parent or legal guardian, other than the defendant. As used in this paragraph, 'contact with the victim' includes all physical contact, being in the presence of the victim, communication by any means, any communication by a third party acting on behalf of the defendant, and any gifts. [¶] (5) There is no threat of physical harm to the child victim if probation is granted. The court upon making its findings pursuant to this subdivision is not precluded from sentencing the defendant to jail or prison, but retains the discretion not to do so. The court shall state its reasons on the record for whatever sentence it imposes on the defendant." (Italics added.)

For reasons we shall explain, we hold that under former section 1203.066, subdivision (c) a sentencing court has no authority to grant probation to a defendant against whom a true finding under section 1203.066, subdivision (a)(8) has been properly made in a case in which the molestation victim is no longer a child at the time of sentencing. We thus conclude the court did not err to the extent it denied Wills probation without expressly considering under former section 1203.066(c)(2) whether a grant of probation would have been in Megan's best interests at the time Wills molested her in 1995. Accordingly, we deny Wills's petition and affirm the judgment.

## FACTUAL BACKGROUND[3]

### A. *Wills's Sexual Offenses Against Megan in Late 1995*

In November 1995 Wills was living with his girlfriend, Megan's mother, Megan and her sister Daphne, and his son Levi. Megan was 11 years old at the time. Wills was 43 years of age. He served in combat in Vietnam, was decorated for his service, and suffered from posttraumatic stress disorder. He was also a drug and alcohol abuser. Megan called Wills "Papa" during the time he lived in the residence because her mother introduced him to her as "Papa," and his son called him "Papa," but she felt uncomfortable calling him by that name.

In late 1995 Wills sexually molested Megan on several occasions. The night before she reported the molestation to her mother and the San Diego County Sheriff's Department, Megan was awakened by Wills, who was touching her leg. Wills moved his hand up her leg and touched her vagina and buttocks under her underwear.

On another occasion, on a school day while Megan was sitting at the computer playing solitaire, Wills sat next to her and touched her vagina and breasts with his hand under her clothes. Wills massaged and squeezed Megan's breasts and asked her whether it felt good. When he massaged her vagina, Megan flinched, tried to close her legs, and told him to stop.

Another day, when Megan stayed home from school, she sat down on Wills's lap in her bedroom at his request. As he was showing her how to play chess, he began to touch her all over her body. He touched her vagina,

---

[3] Because Wills pleaded guilty before trial, the following factual background is taken from the reporter's transcript of the September 1, 2005 preliminary hearing; the probation officer's report dated April 26, 2006; the report dated December 5, 1995, and prepared by the Center for Child Protection (CPS) at Children's Hospital and Health Center (Children's Hospital); the exhibits attached to the People's statement in aggravation filed on May 1, 2006; and Wills's written statement dated July 12, 2007, attached as exhibit A to his habeas corpus petition.

breasts, stomach and legs, and kissed her neck. On another occasion, Wills kissed the top of Megan's vagina after pulling down her underwear.

On November 27, 1995, after Megan told her mother about the touchings, her mother took her to CPS at Children's Hospital where Megan was interviewed. CPS prepared a report of that interview.

Megan also reported the molestation to the sheriff's department, which conducted an investigation. On December 21, 1995, in a videotaped interview conducted by Detective Nick Saraceni, Wills admitted that he touched Megan on her chest under her shirt. Wills called back on December 28, 1995, and admitted to Detective Saraceni in tape-recorded and transcribed telephonic statements the truth of the allegations Megan had made against him, stating, "I agree to all the charges that [Megan] has put in there" and confirming the details of the molestations.

The last time Megan saw Wills prior to the September 2005 preliminary hearing was two weeks after her initial reporting.

B. *January 1996 Charges and Wills's Failure to Appear at the Arraignment*

On January 2, 1996, Wills was charged in a felony complaint with seven counts of a lewd act upon a child under the age of 14 (§ 288, subd. (a)), with an allegation as to two of those counts that he had substantial sexual conduct with the victim within the meaning of section 1203.066, subdivision (a)(8).

Wills was informed by mail of his January 24, 1996 arraignment date, but he failed to appear at that hearing.

C. *January 31, 1996 Arrest Warrant*

Based on a declaration submitted by Detective Saraceni, a warrant for Wills's arrest for the sex offenses he admitted he committed was issued on January 31, 1996. In his declaration, Detective Saraceni stated that Wills's last known address was a specified address in Fullerton, California. Detective Saraceni's investigative report dated December 26, 1995, which reported the statements Wills made during the videotaped interview that Detective Saraceni conducted December 21, 1995, indicated that Wills had provided that address.

D. *Wills's February 1996 Apartment Rental in Mexico and July 2005 Arrest*

In a supplemental statement, which is not executed under penalty of perjury, that he has submitted in support of his habeas corpus petition, Wills

states that after he "[went] to the police station to tell them of the events that took place with Megan," he and Megan's mother stayed with his former spouse's sister in Fullerton for "a few weeks," and then decided to go to Rosarito Beach in Baja California, Mexico, where they "found a small house."[4] He asserts he rented an apartment from Hugh Wynn in Cantiles Dorado, Rosarito Beach, in February 1996.

More than nine years later, in July 2005, the United States Marshals Service arrested Wills in Hawaii on a warrant. He was then extradited to California. As already discussed, Wills pleaded guilty in March 2006 to three counts of violating section 288, subdivision (a), and admitted a section 1203.066, subdivision (a)(8) enhancement allegation.

## DISCUSSION

### I. *THE APPEAL*

In his appeal Wills contends the judgment should be reversed and the case remanded for resentencing because the court erred by conducting the section 1203.066 probation analysis without considering under former section 1203.066(c)(2) whether probation would have been in the victim's best interests at the time of the 1995 offenses. We reject this contention.

### A. *Background*

The parties agree that as a result of his admission of the section 1203.066, subdivision (a)(8) enhancement allegation,[5] Wills was presumptively ineligible for probation unless he demonstrated eligibility under the criteria specified in subdivision (c) of that section. At the sentencing hearing in May 2006, defense counsel argued that Wills was entitled to a grant of probation because he satisfied all of the section 1203.066, subdivision (c) probation eligibility criteria with the exception of the "best interest of the child" factor set forth in former section 1203.066(c)(2) (discussed, *post*), which he asserted did not apply because Megan was 22 years of age, there was "no child as we

---

[4] Wills's written statement dated July 12, 2007, was attached as exhibit A to his petition for writ of habeas corpus in this matter.

[5] Section 1203.066, subdivision (a)(8) provides: "(a) Notwithstanding Section 1203 or any other law, *probation shall not be granted to*, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, *any of the following persons*: [¶] . . . [¶] (8) *A person who, in violating Section 288 or 288.5, has substantial sexual conduct with a victim who is under 14 years of age.*" (Italics added.) The term "substantial sexual conduct" is defined as "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." (§ 1203.066, subd. (b).)

stand here today," and thus it was "impossible to analyze whether a grant of probation would be in the child's best interest."

The prosecutor argued Wills was ineligible for probation because Wills could not meet the "best interest of the child" criterion set forth in former section 1203.066(c)(2) as the "exception" therein "has to be for a very specific circumstance where there is a child to help," and here there was no child to help. The prosecutor also argued Wills could not meet that criterion because probation would not have benefited Megan around the time of the offenses as there was no continuing relationship between Wills and Megan's mother after Wills was charged in this matter, and he left the country "knowing that there was this investigation going on."

The court addressed the "equities" of the case. Relying on the probation officer's report, the court stated: "These charges came to light in [19]95. They were investigated. [Wills] was aware of the investigation, and when the complaint was filed on January 2nd, [19]96, it became necessary to issue a warrant for his arrest, he was gone. And he fled to the Republic of Mexico, and then eventually got nabbed going from there to Hawaii, and I think trying to come back. And so he got extradited from Hawaii when I think the U.S. Marshals got him in Hawaii." The court asked counsel, "How is it by voluntarily absenting himself from these proceedings does he get himself in . . . a better position than he would have been in 1995, early [19]96 when he would have had to meet the same five criteria [in section 1203.066, subdivision (c)]?"

In response, defense counsel acknowledged that Wills "was aware of the investigation, and he was actually brought in for questioning by police detectives, had . . . numerous phone conversations, in-person interviews with them, was never arrested." Acknowledging also that a felony complaint was filed against Wills, defense counsel then stated, "my understanding was that he didn't know about it. He . . . didn't just abscond to Mexico. He actually went on, had a claim for V[eteran] A[dministration] benefits. I think the court has some paperwork with regard to all of the things he has done in the interim in dealing with the Veterans Administration . . . and the government, and getting money, and has certainly not been hiding. [¶] I think that with reasonable means he could have been located at any point in between [19]95 or [19]96 and 2005 . . . ." Defense counsel also stated, "I don't believe [Wills] was attempting to come back from Hawaii when he was arrested. I think he was there visiting ill family members, and they just came there and arrested him because they knew he was there. But I don't think [Wills] knowingly wandered around the United States putting himself out there, getting mail and applying for various benefits, knowing that there was a warrant out for his arrest and that he could be arrested at any moment."

The court found that Wills was ineligible for probation, reasoning that "based upon the circumstances of this case and the facts that exist, the court is not able to make a determination that a grant of probation would be in the best interests of the child."

### B. *Analysis*

#### 1. *The People's forfeiture claim*

As a preliminary matter, we reject the People's contention that Wills forfeited his claims of error at sentencing by not objecting on any basis to the court's denial of probation, including the court's purported error of not considering the victim's "best interest" at the time of the 1995 offenses. While it is true that defense counsel acknowledged during the sentencing hearing that "there [was] no set of circumstances in which [Wills] could possibly meet Factor No. 2" (former § 1203.066(c)(2)) because Megan was not a child at the time of sentencing, his appeal raises a question of law that is cognizable notwithstanding his failure to object: Does former section 1203.066(c)(2) apply when the victim is no longer a child at the time of sentencing? (See *People v. Welch* (1993) 5 Cal.4th 228, 234–235 [19 Cal.Rptr.2d 520, 851 P.2d 802] [waiver rule does not apply to "pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court"].)

#### 2. *Merits*

■ With respect to the merits, our decision on the question of whether former section 1203.066(c)(2) applies when the victim is no longer a child at the time of sentencing requires the resolution of an issue of statutory interpretation governed by well-established principles. "The objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent. [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) "We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) The interpretation of a statute presents a question of law subject to de novo appellate review. (*CBS Broadcasting, Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 906 [110 Cal.Rptr.2d 889].)

■ Here, we are asked to construe the meaning of former section 1203.066(c)(2),[6] which provided: "(c) Paragraph[] . . . (8) . . . of subdivision (a) shall not apply when the court makes *all* of the following findings: [¶] . . . [¶] (2) *A grant of probation to the defendant is in the best interest of the child.*" (Italics added; see full text of former § 1203.066(c) at fn. 2, *ante.*) The plain language of this statutory provision shows that if the victim "is" a "child" at the time the sentencing court is considering whether to grant probation to a defendant who, like Wills, is presumptively ineligible for probation under subdivision (a)(8) of section 1203.066, the court must determine whether a grant of probation would be in the "best interest of the child."

The use of the present tense verb "is" in former section 1203.066(c)(2) ("[a] grant of probation . . . is in the best interest of the child") indicates a plain and clear legislative intent that the sentencing court must evaluate the circumstances existing at the time of sentencing in determining whether a grant of probation would be in the "best interest" of the "child" victim. Had the Legislature intended that such a determination be based on circumstances that existed at the time the defendant molested the victim, it easily could have so provided.

Logically, where, as here, the victim is no longer a child at time of sentencing, the sentencing court is unable to make a finding under former section 1203.066(c)(2) that "[a] grant of probation . . . is in the best interest of the child" for the simple reason that there is no child. In such a case, the sentencing court is unable to make "all" of the findings specified in former subdivision (c) of section 1203.066, as required by that subdivision, and thus

---

[6] The provisions of former section 1203.066, subdivision (c), which were effective through December 31, 2005, apply in this case because (as discussed, *ante*) Wills pleaded guilty to sexual offenses he committed in 1995 against Megan. In 2005, the Legislature amended section 1203.066 to substitute new subdivision (d)(1) for former subdivision (c). (Stats. 2005, ch. 477.) Section 1203.066, subdivision (d)(1) provides: "If a person is convicted of a violation of Section 288 or 288.5, and the factors listed in subdivision (a) are not pled or proven, probation may be granted only if the following terms and conditions are met: [¶] (A) If the defendant is a member of the victim's household, the court finds that probation *is in the best interest of the child victim.* [¶] (B) The court finds that rehabilitation of the defendant is feasible and that the defendant is amenable to undergoing treatment, and the defendant is placed in a recognized treatment program designed to deal with child molestation immediately after the grant of probation or the suspension of execution or imposition of sentence. [¶] (C) If the defendant is a member of the victim's household, probation shall not be granted unless the defendant is removed from the household of the victim until the court determines that the *best interests of the victim* would be served by his or her return. While removed from the household, the court shall prohibit contact by the defendant with the victim, with the exception that the court may permit supervised contact, upon the request of the director of the court-ordered supervised treatment program, and with the agreement of the victim and the victim's parent or legal guardian, other than the defendant. [¶] (D) The court finds that there is no threat of physical harm to the victim if probation is granted." (Italics added.)

is not authorized to grant probation to a defendant against whom a true finding under section 1203.066, subdivision (a)(8) has been properly made.

Wills cites *People v. Jeffers* (1987) 43 Cal.3d 984 [239 Cal.Rptr. 886, 741 P.2d 1127] (*Jeffers*) in support of his contention the court erred by not considering whether granting him probation would have been in Megan's best interest in 1995 when he molested her. Wills's reliance on *Jeffers* is unavailing. In that case, a jury convicted the defendant of two counts of a lewd act against a child under the age of 14 (§ 288, subd. (a)), and found true allegations he had substantial sexual conduct with the victim (§ 1203.066, subd. (a)(8)). (*Jeffers, supra*, 43 Cal.3d at p. 988.) Because it considered the defendant statutorily ineligible for probation, the court denied probation and imposed a state prison term. (*Ibid.*) The Court of Appeal affirmed, construing the statutory phrase " 'is a member of the victim's household' " in former section 1203.066, subdivision (c)(1)[7] to mean that the offender must still occupy the role of family member at the time the court considers probation eligibility. (*Jeffers, supra*, 43 Cal.3d at p. 991.)

The Supreme Court in *Jeffers* reversed the judgment of the Court of Appeal, holding that a sentencing court's interpretation of the provision of former section 1203.066, subdivision (c)(1) requiring that the defendant have had household-member status *at the time of the offenses* was "more consistent with probable legislative intent than an interpretation requiring household-member status *at the time of sentencing.*" (*Jeffers, supra*, 43 Cal.3d at p. 1000, italics added.) The high court explained that the California Legislature's Joint Committee for Revision of the Penal Code began hearings in late 1980 that resulted in the Roberti-Imbrecht-Rains-Goggin Child Sexual Abuse Prevention Act (Stats. 1981, ch. 1064, §§ 1–6, pp. 4093–4096) that included section 1203.066. (*Jeffers, supra*, at pp. 986, 993.) On the issue of mandatory prison sentencing, some "witnesses remarked that a victim of an intrafamily molestation often feels guilt and responsibility for breaking up the family if the perpetrator is sentenced to prison." (*Id.* at p. 995.) Also, "[i]f an intrafamily molester is imprisoned there could be a loss of financial support for the family, the victim could be blamed by other family members, and the victim's mother might abandon the victim in favor of the molester." (*Ibid.*, fn. omitted.) The high court reasoned that "[i]nterpreting the statute to require determination of household member status *as of the time of sentencing* would require or at least encourage the defendant to maintain a relationship with the victim and the other members of the victim's family after the offense and up

---

[7] The version of former section 1203.066, subdivision (c)(1) at issue in *Jeffers* provided: " '(c) Paragraphs (7), (8), (9), and (10) of subdivision (a) shall not apply when the court makes all of the following findings: [](1) *The defendant* is the victim's natural parent, adoptive parent, stepparent, relative, or *is a member of the victim's household* who has lived in the household.' " (*Jeffers, supra*, 43 Cal.3d at pp. 986–987, fn. 1, italics added.)

to the time of sentencing when a severing of the relationship during this period by the defendant, out of concern for the victim's feelings or in recognition of his own need for rehabilitation, might better serve the interests of both the victim and the defendant." (*Id.* at p. 998, italics added.)

The *Jeffers* court also reasoned that interpreting the word "is" in the statutory phrase "is a member of the victim's household" in that subdivision to refer to the time of sentencing could result in mischief or absurdity. (*Jeffers, supra*, 43 Cal.3d at p. 996.) Specifically, the court expressed concern that such an interpretation could give an incentive to the child victim's mother and her boyfriend offender to marry after the commission of the offense, or even after his conviction, but before the date of sentencing, such that the offender would be eligible for probation under former section 1203.066, subdivision (c)(1) as a stepparent of the victim even though he had never lived in the victim's household and thus was ineligible for probation when he committed the offense. (*Jeffers, supra*, 43 Cal.3d at p. 999.) The high court concluded the Legislature could not have intended such a result. (*Ibid.*)

*Jeffers* is distinguishable in that it involved the household-member status factor set forth in former section 1203.066, subdivision (c)(1), not the "best interest of the child" factor set forth in former section 1203.066(c)(2), and the reasoning expressed in *Jeffers* with respect to the interpretation of the former does not apply here.

*Jeffers*, moreover, contains language *supporting* our interpretation of former section 1203.066(c)(2). When the Supreme Court decided *Jeffers*, subdivision (c)(2) of former section 1203.066 provided in part: " '(c) Paragraph[] . . . (8) . . . of subdivision (a) shall not apply when the court makes all of the following findings: . . . [¶] . . . [¶] (2) *Imprisonment of the defendant is not in the best interest of the child.*' " (*Jeffers, supra*, 43 Cal.3d at p. 987, fn. 1, italics added.) The *Jeffers* court stated that this statutory language showed "not only that subdivision (c)(2) encompasses the problems of financial and emotional dependency and the blaming of the victim by other family members, but also that the Legislature intended to permit a finding of eligibility for probation in cases where these particular problems do not exist but there is some other basis for concluding that imprisonment of the defendant would not be in the child's best interest." (*Jeffers, supra*, 43 Cal.3d at p. 999.) The Supreme Court also stated that these legislative concerns "do relate to conditions existing *at the time of sentencing*," and they "have been directly addressed by the required finding under subdivision (c)(2) of section 1203.066 that imprisonment is 'not in the best interest of the child.' " (*Jeffers, supra*, 43 Cal.3d at p. 999, italics added.)

■     We thus conclude the plain language of former section 1203.066(c)(2) evinces the Legislature's intent that a sentencing court shall have no authority, and thus no legal discretion, to grant probation to a defendant against whom a true finding under section 1203.066, subdivision (a)(8) has been properly made in a case in which the molestation victim is no longer a child at time of sentencing. We thus also conclude the court did not err to the extent it denied Wills a grant of probation without expressly considering whether a grant of probation would have been in Megan's best interests at the time Wills molested her in 1995.

## II. *THE PETITION FOR WRIT OF HABEAS CORPUS*

In his habeas corpus petition, Wills repeats his contention on appeal that the judgment should be reversed and the case remanded for resentencing on the ground the court erred by conducting the section 1203.066 probation analysis without considering whether probation would have been in the victim's best interests *at the time of the offenses*. For reasons discussed, *ante*, we have concluded this contention is unavailing. Wills's petition is barred and must be denied to the extent it raises the same contention we have rejected in his appeal. (*People v. Mayfield* (1993) 5 Cal.4th 220, 224 [19 Cal.Rptr.2d 877, 852 P.2d 372].)

Wills also contends the supplemental exhibits attached to his petition show the court made its sentencing decision based upon the erroneous factual assumptions that (1) Wills did not financially support Megan's mother following the investigation into the molestations; and (2) Wills was a fugitive who fled the jurisdiction following that investigation.[8] Wills asserts the exhibits demonstrate that Megan's mother "and presumably her family were financially and emotionally dependent upon [him] at the time of the offense and later," and "[t]here is every chance that Megan would have felt some guilt had [he] been dispatched to prison at the time—an event which would have terminated the financial assistance."

---

[8] The new exhibits include (1) Wills's purported "declaration" dated July 12, 2007, which was not executed under penalty of perjury; (2) a declaration by Wills's former Rosarito Beach landlord, Wynn, dated July 4, 2007; (3) the declaration of a Rosarito mobilehome park resident, Lois La Fleur, dated July 4, 2007; the declaration of another Rosarito resident, Catherine Worley, dated July 12, 2007; the declaration of Wills's former spouse, Paulette Wills, dated July 7, 2007; copies of Department of Veterans Affairs records showing Wills's various addresses in Puerto Vallarta, Mexico; Coronado, California; Denver, Colorado; and Kailua, Hawaii; (4) a copy of Department of Veterans Affairs regulations indicating that "[Veterans Affairs] disability compensation and pension benefits may not be paid to any veteran named on an outstanding felony warrant, or their dependents, until the veteran has surrendered to authorities or the warrant is cleared"; and (5) a copy of Wills's United States passport incorrectly showing his last name is "Willis."

These contentions are unavailing. The supplemental exhibits are immaterial because they support Wills's claim that granting him probation would have been in Megan's best interest at the time he molested her in 1995. We have already concluded, however, that under former section 1203.066(c)(2) a sentencing court must assess the "best interest of the child" based on circumstances at the time of sentencing, not at the time of the offenses.

## DISPOSITION

The judgment is affirmed; the petition for writ of habeas corpus is denied.

Haller, J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 11, 2008, S162373.