Filed 8/17/20  P. v. Campos CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MATTHEW THOMAS CAMPOS,<br><br>    Defendant and Appellant. | F077384<br><br>(Super. Ct. No. VCF265255A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Kathryn T. Montejano, Judge.

Michael Cross for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and A. Kay Lauterbach, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Matthew Thomas Campos participated in beating a man by punching him in the head with brass knuckles.  The victim subsequently died although the precise cause of death was undetermined.  Campos was convicted of second degree murder.

On appeal, Campos raises three challenges to his conviction. First, he alleges the evidence was insufficient to prove murder. Second, he argues, the jury instructions were incomplete. Third, he raises evidentiary error. We affirm.

## BACKGROUND

**Charges**

The Tulare County District Attorney charged Campos with two crimes: Murder and robbery. (Pen. Code,[1] §§ 187, subd. (a), 211.) The murder charge included allegations that it was committed during a robbery, was gang-related, and that Campos and a principal were armed during the murder. (§§ 190.2, subds. (a)(17)(A) & (a)(22)), 186.22, subd. (b)(5), 12022, subd. (b), & 12022.53 subds. (b)(1) and (e)(1).) The robbery charge included identical armed allegations and a similar gang-related allegation. (§ 186.22, subd. (b)(1)(C).)

**Trial Evidence[2]**

On March 28, 2012, Campos and his friend went to visit his friend's girlfriend. They arrived at her house and entered through the garage where they encountered her alone with the victim. Campos's friend wanted to know if the victim was "messing around … with his girlfriend." Moments later, he attacked the victim by hitting him in the head.

Campos joined in the attack and punched the victim multiple times. His friend then grabbed the victim's arms, restrained them behind his back, and urged Campos to hit the victim with a hammer. But Campos hesitated because he knew "something bad would happen after that."

---

[1] Undesignated statutory references are to the Penal Code.

[2] We omit the gang-related evidence because, as noted *post*, Campos was acquitted of all gang-related allegations.

Instead, Campos wielded brass knuckles and struck the victim in the head. The number of times he hit the victim with the brass knuckles was described as anywhere between one to "more than five times." The victim stopped struggling after he was hit "so many times with the brass knuckles." Campos described the brass knuckles as having "split" the victim's head "open."

After incapacitating the victim, the friend still wanted to know if the victim was "touching" his girlfriend. He then strangled the victim with an electrical cord and stole his money. Campos took $300. They wrapped the victim in a rug and placed the wrapped body in the back seat of the victim's truck. They drove around for several hours while searching for a place to dispose of the body. Campos eventually departed. Both the victim's body and truck were ultimately burned.

The medical examiner was unable to discern a precise cause of death. He opined the cause of death could have been strangling or a blood clot on the side of the head. The blood clot could have been caused by brass knuckles. He also testified the amount of amphetamines in the victim's system would kill a normal person.

**Verdict and Sentence**

Campos was convicted of second degree murder committed with a weapon. He was acquitted of robbery and all other applicable allegations but found guilty of the lesser included offense of grand theft. He was sentenced to serve 16 years to life in state prison.

## DISCUSSION

Campos raises three questions on appeal. One, is the evidence sufficient to prove malice and causation for murder? Two, did the instructions fail to adequately explain causation? Three, did the court erroneously sustain a hearsay objection? We find the issues are without merit and affirm the judgment.

**I. The Evidence Sufficiently Proved Murder**

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

3.

of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639 (*Jennings*).)

Second degree murder requires proof of an act, committed with malice aforethought, resulting in death. (§ 187; *People v. Cravens* (2012) 53 Cal.4th 500, 507 (*Cravens*).) Malice aforethought may be express or implied. (*Cravens,* at p. 507.) Causation may be proximate. (*People v. Sanchez* (2001) 26 Cal.4th 834, 845 (*Sanchez*).) We find the record sufficiently proves these elements.

**A. Malice**

Implied malice exists when a person performs an act, the natural and probable consequences of which are dangerous to human life, and acts with conscious disregard to that danger. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) The record readily supports this element.

The victim here was restrained with his arms behind his back and placed at Campos's mercy. Campos, recognizing the victim's vulnerability, hesitated to strike him with a hammer because he knew "something bad would happen after that." Inexplicably, he began punching him in the head with brass knuckles, "split[ting]" his head "open," and rendering him defenseless.

Campos admittedly knew using the hammer was dangerous to human life.  On this record, using brass knuckles instead does not somehow transform the attack into a less dangerous one.  "[T]he circumstances of the attack alone" readily justify inferring a conscious disregard for endangering life.  (*Cravens, supra,* 53 Cal.4th at p. 511.)  Accordingly, the evidence sufficiently proved implied malice.

**B. Causation**

"[P]roximate causation, not direct or actual causation … determines [a] defendant's liability for murder."  (*Sanchez, supra,* 26 Cal.4th at p. 845.)  "The circumstance that … direct or actual causation cannot be established does not undermine [a] murder conviction if it [is] shown beyond a reasonable doubt that [a] defendant's conduct [is] a substantial concurrent cause of … death."  (*Ibid*.)  "This is true even if the victim's preexisting physical condition was also a substantial factor causing death."  (*People v. Catlin* (2001) 26 Cal.4th 81, 155 (*Catlin*).)  Substantial is distinguished from " 'insignificant or merely theoretical' " factors.[3]  (*Jennings, supra,* 50 Cal.4th at p. 643.)

" ' "A cause is concurrent if it was operative at the time of the death and acted with another cause to produce the death." ' "  (*Sanchez, supra,* 26 Cal.4th at p. 847.)  "[A]s long as the jury finds that without the criminal act the death would not have occurred when it did, it need not determine which of the concurrent causes was the principal or primary cause of death."  (*Catlin, supra,* 26 Cal.4th at p. 155.)  "[I]t is no defense that the conduct of some other person contributed to the death."  (*Jennings, supra,* 50 Cal.4th at p. 643.)

---

[3] "[T]he 'substantial factor' rule for concurrent causes 'was developed primarily for cases in which application of the but-for rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result.' "  (*Jennings, supra,* 50 Cal.4th at p. 644.)

The evidence in this case meets the standard. Although no definitive cause of death was proven, the jury was entitled to believe either the blood clot or strangulation caused death. Campos's conduct was a substantial factor in both.

For example, the jury could have reasonably believed Campos caused the blood clot with a strike to the side of the head with brass knuckles. Although Campos testified he only hit the victim with the brass knuckles once in the forehead, there was also evidence he hit the victim multiple times with the brass knuckles. Dr. Burr Hartman, a certified forensic pathologist, testified the brass knuckles could have caused the blood clot. And the blood clot could have caused death. The jury was entitled to believe Campos caused the blood clot which in turn caused death.

Dr. Hartman also testified strangulation could have caused death. Campos's conduct was a substantial factor in the strangling in two ways. First, the strikes with brass knuckles rendered the victim defenseless and the strangling followed shortly thereafter. More directly, if Campos indeed caused the blood clot, the blood clot would have killed the victim within minutes even if strangulation actually caused death. Either way, Campos's conduct was neither insignificant nor theoretical. It was " ' "operative at the time of the death and acted with another cause to produce the death." ' " (*Sanchez, supra,* 26 Cal.4th at p. 847.)

Nevertheless, Campos vigorously urges methamphetamine overdose could have caused the victim's death. We question whether the record actually supports this cause of death. Dr. Hartman never explicitly testified methamphetamine overdose could have caused the death.[4] But even were we to assume it could have caused the death, the record credibly established the victim was alive when Campos struck him with the brass

---

[4] Dr. Hartman testified the evidence indicated the victim "was tolerant to methamphetamine. … This was not his first rodeo." He continued that if, instead, the victim was intolerant to methamphetamine *and* was forced to consume it then it could have caused death. But the record does not bear out this theory.

knuckles. The jury was thus entitled to believe the blood clot or strangulation, rather than methamphetamine overdose, caused death.[5] (See *Catlin, supra,* 26 Cal.4th at p. 155 [sufficient causation as long as "preexisting physical condition" is not sole substantial factor].)

## II. The Instructions Properly Explained Causation

Apart from challenging the evidence of causation, Campos separately attacks the instructions explaining causation. To that end, he faults the court for not instructing the jury regarding independent intervening causes of death. We find the instructions proper because the evidence did not warrant an intervening cause instruction.

### A. Additional Background

The trial court instructed the jury with CALCRIM No. 520. As relevant to causation, the instruction explains:

> "An act causes death if the death is the direct, natural and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence.

> "There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death, and the death would not have happened without the act. A substantial factor is more than a trivial or remote factor. It must actually contribute to the death. However, it does not need to be the only factor that causes the death."

This explanation was repeated once.

---

[5] Campos urges other factual scenarios including that the blood clot was caused later when Campos was not present. Our concern with sufficiency of evidence is only whether the facts support the verdict. We need not ascertain or divine the jury's precise logic. Rather, we must determine whether the jury could have reasonably found Campos guilty. The jury, not this court, resolves the facts. (*Jennings, supra,* 50 Cal.4th at pp. 638-639.)

**B. Analysis**

" 'A trial court has a sua sponte duty to "instruct on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case[.] " ' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 586.) "A party may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503.)

A "defendant is liable for homicide unless a superseding intervening act has broken the chain of causation. The intervening act must be unforeseeable and extraordinary, and a defendant remains liable if he might reasonably have contemplated the possible consequence or should have foreseen the possibility of harm of the kind that could result from his act." (*People v. Moncada* (2012) 210 Cal.App.4th 1124, 1133; *People v. Cervantes* (2001) 26 Cal.4th 860, 871 (*Cervantes*) [independent means "unforeseeable" and "extraordinary"].)

The instructions here correctly conveyed the law. Campos foresaw the result when he admittedly hesitated to hit the victim with a hammer. Resorting instead to brass knuckles does not change this calculus. The homicide was neither extraordinary nor unforeseeable considering the fight was violent and involved weapons. (See *Cervantes, supra,* 26 Cal.4th at p. 871 [" 'The precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act.' "].)

Because the homicide was foreseeable, an instruction on independent intervening causes of death was unwarranted. The instructions as given were complete and sufficient.

In any event, Campos failed to request a special instruction regarding intervening causes. His failure would forfeit his claim the instructions incompletely explained causation principles. We reject his claim alleging instructional error.

### III. Hearsay Objection Correctly Sustained

During Campos's testimony, he was asked about what his friend stated about the homicide. The prosecutor objected on hearsay grounds and, after a lengthy discussion, the objection was sustained.

Campos now argues "[i]t was error for the court to sustain the objection because the question did not call for hearsay [and], if it did, the hearsay was admissible as a statement against interest …." We conclude the ruling was proper.

#### A. Additional Background

After the objection, the court held a lengthy discussion with counsel outside the jury's presence. Defense counsel stated the proposed testimony would be that the victim said, "If she wants to play, let her play." Counsel argued the statement was admissible because it was against penal interest as it implicated him in the homicide and "explains how everything got started. It was a spur-of-the-moment event. It was not planned. It wasn't premeditated. It happened spontaneously … because he thought" the victim was "fooling around" with his girlfriend.

The prosecutor argued "it's hearsay …. I don't think that the circumstances … show this to be very reliable. There's any number of reasons why [he] could have possibly said this statement that are [sic] self-serving at this time. I mean, the defendant was describing this was the week of his prelim. They were on prelim for murder charges…. I don't see any indication of reliability in this case."

The court ultimately agreed with the prosecutor. It sustained the objection because the statement was "mitigating …."

#### B. Discussion

A statement is admissible if "when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability … that a reasonable man in his position would not have made the statement unless he believed it to be true." (Evid. Code, § 1230.) The rationale underlying this rule

9.

"is that 'a person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest[.]' " (*People v. Grimes* (2016) 1 Cal.5th 698, 711 (*Grimes*).)

" '[T]he proponent of such evidence must show that the declarant is unavailable, that the declaration was against the declarant's penal interest when made and that the declaration was sufficiently reliable to warrant admission despite its hearsay character.' " (*Grimes, supra,* 1 Cal.5th at p. 711.) To determine trustworthiness, " 'the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.' " (*Ibid*; *Williamson v. United States* (1994) 512 U.S. 594, 603 ["whether a statement is self-inculpatory or not can only be determined by viewing it in context"].) Only "specifically disserving" statements are admissible.[6] (*People v. Duarte* (2000) 24 Cal.4th 603, 612 (*Duarte*).)

"We review a trial court's decision whether a statement is admissible under Evidence Code section 1230 for abuse of discretion." (*Grimes, supra,* 1 Cal.5th at p. 711.) The ruling " ' "will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice." ' " (*People v. Young* (2019) 7 Cal.5th 905, 931.) " 'A merely debatable ruling cannot be deemed an abuse of discretion.' " (*People v. Miracle* (2018) 6 Cal.5th 318, 346.)

---

[6] In *Grimes, supra,* the Supreme Court explained the specifically disserving rule is not absolute because it "permits courts to consider whether the portion of a confession that tends to exculpate another, rather than to shift blame or curry favor, should be admitted in view of surrounding circumstances, even though the exculpatory portion of the statement is not independently disserving of the declarant's interests." (*Grimes, supra,* 1 Cal.5th at p. 715.) A statement that exculpates another must still, however, be "sufficiently reliable to warrant admission …." (*Id*. at p. 716; Evid. Code, § 1230.)

The trial court here correctly concluded the statement at issue was not admissible because it was not specifically disserving and thus unreliable. As the court noted, the statement was "mitigating" in light of the charges alleging premeditation and deliberation, and the various special circumstances. In this case, these charges were based on a preformed plan to commit robbery or murder. By offering an explanation for the homicide inconsistent with either plan, the statement is exculpatory because it defeats premeditation and the various special circumstances.

The statement's timing further supports the conclusion. The statement was made near the upcoming preliminary hearing at which both Campos and his friend were facing first degree murder charges based on premeditation and a plan to commit robbery.[7] This bolsters the conclusion it was unreliable because, as the court concluded, taken in context it was "mitigating …."[8]

Even if the statement had been admitted, Campos would not have received a more favorable result. (*Duarte, supra,* 24 Cal.4th at pp. 618-619 [Evidence Code section 1230 errors are reviewed for harmlessness under the " 'reasonably probable that a result more favorable to the defendant would have been reached' " standard].) The evidence adduced at trial adequately conveyed the theory his friend attacked the victim due to jealousy. And defense counsel appropriately argued the theory during closing argument.[9]

---

[7] Campos and his friend were charged as codefendants but, after a joint preliminary hearing, were tried separately.

[8] Campos also argues the statement was "admissible as reliable and trustworthy defense hearsay." He cites *Chambers v. Mississippi* (1973) 410 U.S. 284 as authority. *Chambers* held only that the facts in its case indicated the statement was reliable and trustworthy. It did not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures." (*Id*. at pp. 302-303.) In contrast, the trial court here found the statement at issue unreliable—a conclusion we find a proper exercise of discretion.

[9] Defense counsel argued "there was no plan" because the friend started the attack due to "suspicio[n]" the victim was "fooling around with his girlfriend." Indeed, this theory aligns best with the actual verdicts.

11.

In sum, the court's ruling was not arbitrary, capricious, or absurd. It was based on reasoned analysis. For these reasons we reject the evidentiary error claim.

# **DISPOSITION**

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


LEVY, Acting P.J.


POOCHIGIAN, J.

13.